[No. 3239-6-III.   Division Three.   June 12, 1980.]

SAMUAL J. CAMPANELLA, ET AL, *Appellants,* v. RAINIER
NATIONAL BANK, ET AL, *Respondents.*

*Gary A. Riesen* and *Foster & Riesen,* for appellants.

*Edward T. Engst,* for respondents.

ROE, J.—Samual Campanella and Vivian Dexter appeal
the dismissal of a real property foreclosure action.

Campanella and Dexter (herein called Campanella) were
the owners of the Columbia Hotel. In January 1977, they
sold the hotel by contract to Garrick Hotels and took as
security for the amount due them a deed of trust. Garrick
Hotels resold the property to Douglas Hotels (Douglas),

which intended to remodel the facility. Douglas sought financing from Rainier National Bank (Rainier) and the British American Mortgage Corporation (BAMC). Rainier agreed to provide 1–year short–term financing if Campanella would agree to subordinate his first priority for 1 year. BAMC was then to assume the long–term financing. On September 28, 1977, Rainier and Douglas executed such a financing agreement which also provided that Douglas make monthly payments to Rainier on principal and interest beginning October 28, 1977.

A subordination agreement was prepared by BAMC and executed by the parties. It stated as follows:

1. Campanella [includes Dexter] shall subordinate his Deed of Trust dated June 1, 1977, recorded July 13, 1977, under Auditor's No. 775061, for a period of one year from the date of closing on the purchase, to that first lien which will be granted to Rainier National Bank of Wenatchee, Washington on or before the date of closing and shall subordinate any personal property security interest which he may have to that first lien which will be granted to Rainier National Bank of Wenatchee, Washington on the personal property covered by the sale for one year from the date of closing.

The date of closing was September 28, 1977. For this subordination Campanella received $10,000. Once BAMC assumed the long–term financing, Campanella and BAMC were to share jointly the first priority position.

Although Douglas did not make the first three monthly loan payments to Rainier and was in default, Rainier took no action. In late December 1977, Rainier began to receive a series of interest–only payments. In May, Rainier received a $15,000 check from BAMC apparently to cover Douglas' delinquency.[1] The check was dishonored when presented for payment. Finally, on August 4, 1978, 10 months after Douglas' first default, Rainier commenced a nonjudicial foreclosure action. The trustee's sale was set for November 17, which would be more than a year after the

---

[1] The record fails to indicate why BAMC sent the check.

date of the closing of the 1–year subordination agreement. On November 2, Campanella commenced an action to foreclose his deed of trust and to enjoin Rainier's sale.

At trial, Campanella testified that the parties intended Rainier to have priority only until September 28, 1978. Rayburn, a bank officer, testified that there was never any discussion about whether Rainier would have to complete foreclosure within the 1–year period.[2]

The sole issue before this court is whether Rainier's priority automatically lapsed after 1 year, or in September of 1978, even though its foreclosure action was begun within the year. If it had lapsed, Rainier's nonjudicial foreclosure action does not preserve Rainier's first priority.[3]

■ Subordination agreements frequently arise from a mutual enterprise wherein the property owner provides the building site, the purchaser the expertise in developing the site, and the bank provides the capital. The bank's priority rights under a subordination agreement are strictly limited to the express terms and conditions of the agreement. *Ban–Co Inv. Co. v. Loveless*, 22 Wn. App. 122, 587 P.2d 567 (1978). The rationale behind the rule is that the owner is a quasi–surety who has pledged his property to the bank in order to finance a construction loan. This is done anticipating that the loan proceeds will enhance the value of the property to a position where both the bank and the owner are protected. Should the bank fail to follow the terms of the subordination agreement, the owner's security could be jeopardized, leaving him at the mercy of the developers. *See Miller v. Citizens Sav. & Loan Ass'n*, 248 Cal. App. 2d

---

[2]Had Rainier started foreclosure on the delinquencies occurring in the first 3 months, it would have been possible to complete the foreclosure within the year.

[3]Rainier commenced its action on August 4, 1978. The minimum time between the date of commencing a nonjudicial foreclosure by the giving of a notice of default to the date of trustee's sale is 120 days, placing the trustee's sale outside the priority period. *See* RCW 61.24.030(6) and RCW 61.24.040(1).

655, 56 Cal. Rptr. 844 (1967); Annot., *Specific Performance—Requisite Definiteness of Provision in Contract for Sale or Lease of Land, That Vendor or Landlord Will Submit His Interest To Permit Other Party To Obtain Financing*, 26 A.L.R.3d 855 (1969).

The subordination agreement should be construed in favor of the owners. First, the language of the agreement provides for a fixed 1-year term. The bank admits, through the testimony of Rayburn, that there were no oral agreements to the contrary. Had the bank intended the subordination term to provide for an additional time, it could have so specified in the agreement, but it did not. Second, if this court interpreted the agreement to allow the additional time to complete the foreclosure action, it would be subjecting the owners to an open-ended extension because the foreclosure could become the subject of protracted trial and appellate court proceedings. This would in effect rewrite the instrument. It is reasonable to assume that where the owners have received an express sum in exchange for a fixed priority term, that at the end of the term the owners would be restored to their former position. Finally, although there is no evidence that the funds were misapplied by the bank, Rainier undoubtedly evaluated the development and transferred the loan funds to the developer. Theoretically, if the project had been correctly evaluated and the funds properly applied, the value of the hotel should now be sufficient to satisfy the claims of both parties.

We hold the bank could have anticipated the problems arising here and provided for them in the subordination agreement; then Campanella would have known exactly the perilous position of his priority.

Rainier argues that the parties intended that the priority period would be tolled when the foreclosure action was commenced. This contention assumes there is evidence in the record to support such an intent. There is none.

422

We reverse.

McINTURFF, A.C.J., and MUNSON, J., concur.

Reconsideration denied July 9, 1980.

Review granted by Supreme Court October 24, 1980.